FILED
2017 Nov-01  AM 09:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **WILLIE KING, et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **WEST MORGAN-EAST** | ) | |
| **LAWRENCE WATER AND** | ) | |
| **SEWER AUTHORITY; 3M** | ) | |
| **COMPANY; DYNEON, L.L.C.;** | ) | |
| **AND DAIKIN AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

**COME NOW** Plaintiffs in the above-styled action, by and through their undersigned counsel, and hereby bring this Class Action Complaint against West Morgan-East Lawrence Water and Sewer Authority, 3M Company, Dyneon, L.L.C., and Daikin America, Inc., and allege as follows:

## PARTIES

1.      Defendant West Morgan-East Lawrence Water and Sewer Authority (hereinafter referred to as "WMEL"), is a public corporation formed pursuant to Ala. Code § 11-88-3, *et seq.*, with its principal place of business in Morgan County,

Alabama. WMEL provides domestic water supplies to its own customers in Morgan and Lawrence County, Alabama.

2. Defendant 3M Company (hereinafter referred to as "3M"), is a foreign corporation doing business in the State of Alabama, and was doing business in Morgan County, Alabama at all times pertinent to this Complaint.

3. Defendant Dyneon, L.L.C. (hereinafter referred to as "Dyneon"), is a wholly owned subsidiary of 3M, and is a foreign corporation, doing business in the State of Alabama, and was doing business in Morgan County, Alabama at all times pertinent to this Complaint.

4. Defendant Daikin America, Inc. (hereinafter referred to as "Daikin"), is a foreign corporation doing business in the State of Alabama, and was doing business in Morgan County, Alabama at all times pertinent to this Complaint.

5. Plaintiffs are residents of Lawrence and Morgan County, Alabama, and at all times pertinent to this Complaint, are or have been customers of WMEL. Plaintiffs utilized water provided by WMEL for drinking, cooking, planting, and other domestic purposes. Specifically, the following individuals are named Plaintiffs in this lawsuit:

a) Willie King resides in Lawrence County, received her water from WMEL, and has been diagnosed with kidney cancer.

2

b) Tammi Yarbrough resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

c) Kristin Winchester resides in Lawrence County, received her water from WMEL, and has been diagnosed with hyperthyroidism.

d) Betty Willhoite resides in Morgan County, received her water from WMEL, and has been diagnosed with thyroid cancer.

e) Theresa White resides in Lawrence County, received her water from WMEL, and has been diagnosed with kidney cancer and hyperthyroidism.

f) Carrie Warren resides in Lawrence County, received her water from WMEL, and has been diagnosed with kidney cancer.

g) Steve Robinson resides in Morgan County, received his water from WMEL, and has been diagnosed with hyperthyroidism.

h) Sarah Pride resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

i) Linda Pride resides in Lawrence County, received her water from WMEL, and has been diagnosed with hyperthyroidism.

j) Mary Mitchell resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

k) Gwendolyn Miller resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

3

l)  Mike Lampkin resides in Lawrence County and Morgan County, received water from WMEL, and has been diagnosed with thyroid disease.

m) Rita Faye King resides in Lawrence County, received water from WMEL, and has been diagnosed with thyroid disease.

n)  Alice Jones resides in Lawrence County, received water from WMEL, and has been diagnosed with thyroid disease.

o)  Virgie Hampton resides in Lawrence County, received water from WMEL, and has been diagnosed with kidney cancer.

p)  Vanessa Hampton resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

q)  Samuel Gray resides in Morgan County, received his water from WMEL, and has been diagnosed with thyroid disease.

r)  Janet Bradford resides in Morgan County, received her water from WMEL, and has been diagnosed with thyroid disease.

s)  Sandra Almon resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

t)  Sheila Lambert resides in Morgan County, received her water from WMEL, and has been diagnosed with thyroid disease.

u)  Reba Alexander resides in Morgan County, received her water from WMEL, and has been diagnosed with kidney cancer.

v) Pamela Kirby resides in Lawrence County, received her water from WMEL, and has been diagnosed with thyroid disease.

w) Chloe Rikard resides in Morgan County, received her water from WMEL, and has been diagnosed with ulcerative colitis.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332(a), because Plaintiffs are citizens of the State of Alabama, most of the named Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e), in that a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Alabama.

## FACTUAL BACKGROUND

8.     Defendants 3M, Dyneon, and Daikin, are three of the major manufacturers and/or users of Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), and related chemicals.

9.     All Defendants have facilities located in Decatur, Alabama.

10.    3M and Dyneon are the present owners and operators of manufacturing and disposal facilities in Decatur, Alabama, which continue to release PFOA, PFOS, and related chemicals into groundwater and surface water through which the

chemicals are discharged into the Tennessee River and its tributaries. Defendants manufactured or used these and other chemicals at their facilities and disposed of hazardous and solid waste containing these chemicals in a landfill and a sludge incorporation area on their property and on adjacent property.

11.  3M discharged wastewater containing PFOA, PFOS, and related chemicals from its on-site wastewater treatment plant into tributaries of the Tennessee River.

12.  3M incorporated sludge from the on-site wastewater treatment plant by means of subsurface injection in an on-site area designated as the sludge incorporation area. In addition, 3M discharged wastewater containing PFOA, PFOS, and related chemicals to the Decatur Utilities Dry Creek Wastewater Treatment Plant.

13.  Dyneon's fluoroelastomer facility is located on the southern portion of the 3M Decatur facility.  Dyneon's fluroelastomer operations in Decatur had previously been part of 3M's manufacturing processes at the Decatur facility.

14.  The processed wastewater from Dyneon's operations has been managed through 3M's wastewater treatment system and discharged into the Tennessee River.

15.     The Dyneon sanitary wastewater has been combined with the 3M sanitary wastewater and discharged to the Decatur Utilities Wastewater Treatment Plant.

16.     Daikin manufactures specialty chemicals, including tetrafluroethylene (TFE) and hexafluoropropylene (HFP) fluropolymers at its Decatur, Alabama plant and used PFOA in its manufacturing process. The facility discharges wastewater and site stormwater into the Tennessee River. Daikin's Decatur plant was constructed on land that previously served as a site for the land application of the adjacent 3M biosolids contaminated with PFOA, PFOS, and related chemicals. Daikin discharges sanitary wastewater contaminated with PFOA, PFOS, and related chemicals to the Decatur Utilities Wastewater Treatment Plant.

17.     As stated above, WMEL provides water to customers in Morgan and Lawrence County, Alabama. WMEL's source of water is the Tennessee River, and as a result of the other Defendants' discharge of PFOA, PFOS, and other related chemicals into the Tennessee River and its tributaries, WMEL has distributed and continues to distribute water containing these chemicals to Plaintiffs.

18.     The human health risks caused by exposure to low levels of PFOA, PFOS, and related chemicals include various forms of cancer, thyroid disease, and ulcerative colitis. The stable carbon-fluoride bonds that make PFOA and PFOS such pervasive industrial and consumer products also result in their persistence. There is

no known environmental breakdown mechanism for these chemicals. They are readily absorbed into the human body and have a tendency to accumulate with repeated exposure.

19.    The association between exposure to these chemicals and certain cancers has been reported by the C8 Health Project (hereinafter referred to as "the C8"), an independent science panel charged with reviewing the evidence linking PFOA, PFOS, and related chemicals to the risk of disease based on health research carried out by the science panel in the Mid-Ohio Valley population exposed to these chemicals as a result of releases from an E. I. du Pont de Nemours and Company chemical plant, as well as other published scientific research.

20.    The C8 specifically listed kidney cancer and testicular cancer as having a "probable link" to PFOA exposure. Epidemiological studies of workers exposed to PFOA support the association between PFOA exposure and both kidney and testicular cancer. Rodent studies also support the link with cancer. The majority of a United States Environmental Protection Agency (hereinafter referred to as "EPA") science advisory board expert committee recommended in 2006 that PFOA be considered "likely to be carcinogenic to humans."

21.    The C8 has found a probable link between exposure to PFOA, PFOS, and related compounds, and the additional human disease: pregnancy-induced hypertension, ulcerative colitis, and high cholesterol.

8

22.    In 2009, the EPA published provisional drinking water health advisories for PFOA and PFOS, which are currently under review. The advisory for PFOA is 0.4 µg/L (0.4 ppb) and for PFOS is 0.2 µg/L (0.2 ppb).

23.    In 2014, the EPA released a draft of its proposed "reference dose" for PFOA, which is an estimate of how much a person can safely consume daily over a lifetime. That proposed reference dose would translate to a legal limit in drinking water for PFOA of 0.1 ppb, which is one quarter of the 2009 advisory level.

24.    3M has long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals. And still it knowingly and intentionally continued to discharge these chemicals into the Tennessee River in Decatur, Alabama, 13 miles from the water supplies used by Plaintiffs.

25.    3M has known for at least 35 years that PFOA, PFOS, and related chemicals persist in the environment and accumulate in the bodies of humans, fish, and test animals.

26.    3M has known for at least 35 years that PFOA, PFOS, and related chemicals are toxic.

27.    3M has known for at least 14 years that PFOA, PFOS, and related chemicals are not effectively treated by conventional wastewater treatment plan processes and are discharged to surface waters in the effluent and also accumulate in the sludge from wastewater treatment processes.

28.     The EPA took regulatory action on March 11, 2002, and December 9, 2002, by publishing two significant new use rules under the Toxic Substances Control Act to limit future manufacture of PFOA, PFOS, and related chemicals.

29.     The EPA and the Alabama Department of Environmental Management have identified Defendants' facilities as sources of PFOA and PFOS contamination in the Tennessee River in and around Decatur, Alabama, including surface water, porewater, sediments, and fish. The primary source is the 3M facility, with the high levels of POFA and PFOS in groundwater migrating into the Tennessee River.

30.     Based on the contamination in the Tennessee River, The Alabama Department of Environmental Management has placed Wheeler Reservoir from five (5) miles of Elk River to the Joe Wheeler Dam on the state's impaired waters list for PFOS contamination impairing swimming and fish and wildlife use. This includes the area in which WMEL takes water from the Tennessee River.

31.     The Alabama Department of Public Health has issued a fish consumption advisory for portions of Wheeler Reservoir and its tributaries based on contamination of fish with PFOS, including: Baker's Creek embayment at Wheeler Reservoir (Morgan County), Wheeler Reservoir, Tennessee River Mile 303 to 296, area south of the main river channel (Morgan County). This includes the area between Wheeler Dam and River Mile 296 where WMEL takes water from the Tennessee River and provides it to their customers as water utilities.

10

32.     Concentrations of PFOA as high as 4,980 ppb and PFOS as high as 3,890 ppb have been found in groundwater on the 3M site along the south bank of the Tennessee River. Porewater from the bottom of the river bed near the 3M facility, which is groundwater discharging into the river, showed average concentrations of PFOA from 0.0977 to 70.4 ppb.

33.     Sediment concentrations in the river have been found as high as an average of 24.1 ppb PFOA, and surface water concentrations as high as an average of 0.420 ppb PFOA at one monitoring site. PFOS concentrations for single samples collected in the lower, middle and upper reaches of the confluence area where Bakers Creek flows into the Tennessee River were 0.450, 0.691 and 0.0237 ppb, respectively.

34.     Plaintiffs receive or have received their water and other water utilities from WMEL. WMEL's source for the water its supplies to Plaintiffs is an intake in the Tennessee River (Wheeler Reservoir) approximately 13 miles from 3M's manufacturing facilities. The other water utilities in the area purchase water from WMEL to distribute to their customers.

35.     As a direct and proximate result of 3M, Dyneon, and Daikin discharging PFOA, PFOS, and related chemicals into the Tennessee River from their manufacturing facilities and waste disposal operations from the water intake of

WMEL, the water supplied by WMEL to Plaintiffs was and is contaminated with PFOA, PFOS, and related chemicals.

36.    PFOA was detected in all of the finished water samples collected in 2005-2006 from WMEL Water Treatment Plant, about 13 miles from the 3M plant, with concentrations ranging from 0.0442 to 0.155 ppb.

37.    WMEL began testing for PFOA and PFOS in its water supply in 2009 and has consistently found PFOA levels at or near 0.1 ppb and PFOS levels at or near 0.19 ppb, which is approximately 0.2 ppb, or the current EPA advisory level for PFOS. WMEL had knowledge of these levels while they continued to supply the contaminated water to Plaintiffs.

38.    3M, WMEL, and remaining Defendants knew in August of 2009 that the levels for safe drinking water standards they implemented were inadequate to protect Plaintiffs and that under new proposed standards, the PFOS and PFOA levels in the WMEL water supply were dangerously high.

39.    Plaintiffs have had exposure to PFOA as a result of consuming water contaminated by Defendants' water and chemicals.

40.    Exposure and elevated levels of PFOA in the blood of Plaintiffs is sufficient to cause many of the health effects reported in recent studies, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

41.    As a result of their ongoing exposure to drinking water containing harmful levels of PFOA, PFOS, and related chemicals from 3M, Dyneon, Daikin, and WMEL's facilities, Plaintiffs have sustained injuries and risk further immediate and irreparable harm.

42.    Defendants knew that their actions contaminated the water of the Tennessee River and that it was used for public consumption, yet failed to warn Plaintiffs of the presence of these chemicals until Plaintiffs sustained irreparable injuries.

43.     To this day, Defendants still deny the harmful effects of PFOS and PFOA.[1]

## CLASS ACTION ALLEGATIONS

44.    Plaintiff incorporate the foregoing paragraphs of this Complaint as though fully set forth herin.

45.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of a Class consisting of all other persons similarly situated as members of the proposed classes:

---

[1] Due to this continuous, ongoing, and fraudulent denial and/or concealment (3M knew thirty-five years ago that the chemicals are harmful to human health, yet still publically states that Plaintiffs are not at risk of any detrimental health effects), Plaintiffs' lawsuit is timely under the "discovery rule" of Alabama in that the earliest they could have discovered the injuries they suffered was November 15, 2016, the date upon which Peter Grevatt, the director of the EPA clarified the drinking water Health Advisory Standards for PFOA and PFOS.  Defendants, to this day, still deny the link between the chemicals and any health effects.   See http://www.startribune.com/minnesota-drastically-tightens-safety-limits-on-3m-chemicals-in-groundwater/423874423/   *last accessed October 27, 2017 ("Dr. Carol Ley, 3M's vice president and corporate medical director, said in a statement, "We believe the advisory levels announced by MDH are overly conservative. We believe that PFOS and PFOA do not present health risks at levels they are typically found in the environment or in human blood.")

46.     This action is brought by the Plaintiffs on their own behalf and as representatives of the class defined herein.

47.     The Members of the Class are defined as follows:

All persons who live in properties (or who have lived in properties) connected to the West Morgan East Lawrence Water system and have been diagnosed with high cholesterol, ulcerative colitis, thyroid disease, testicular cancer, kidney cancer, and pregnancy-induced hypertension.

48.     Excluded from the Class are: (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) and any class counsel or their immediate family members.

49.     The class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  According to the audited financial statements of WMEL, as of September 30, 2016, WMEL serves approximately 10,245 customers.  The customers can be easily identified via public records and/or the Defendant's

internal records and notified of the pendency of this action by mail and other public forums.

51.      Plaintiffs' claims are typical of the claims of the members of the class since all members of the Class are similarly affected by Defendants' conduct resulting in injury to all members of the Class.

52.      Plaintiffs will fairly and adequately protect the interest of members of the Class and have retained counsel competent and experienced in class action and environmental litigation.

53.      Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the resources to do so.

54.      Neither Plaintiffs nor their counsel has interest adverse to any of the Classes.

55.      Plaintiffs bring this action under Rule 23(b)(3) because numerous questions of law and fact common to class members predominate over any question affecting only individual members.  The answers to these common questions will advance resolution of the litigation as to all class members.  These common legal and factual issues include:

   a. Whether Defendants owed a duty to Plaintiffs and members of the Subclasses and whether Defendants breached that duty;

b.  Whether Defendants knew or should have known that their manufacture of products containing PFOA and PFOS was unreasonably dangerous;

c.  Whether Defendants knew or should have known that their actions caused persistent, stable, and mobile chemicals to be present and contaminate the Plaintiffs' drinking water;

d.  Whether Defendants failed to sufficiently warn class members of the harm that their actions were likely to cause;

e.  Whether Defendants became aware of health and environmental harm caused by PFOA and PFOS and whether they failed to warn the Plaintiffs and the putative class of same;

f.  Whether the members of the Class have sustained damages and the proper measure of said damages; and

g.  Whether Defendants are liable to Plaintiffs and the Class for their actions;

56.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.

57.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final, legal, and equitable relief with respect to the class as a whole.

58.     Furthermore, the expense and burden of individual litigation outweighs the individual damages suffered by individual Class members, making it impossible for members of the Class to individual redress the wrongs done to them.

59.     Class treatment of common questions of law and fact will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

60.     There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/WILLFULNESS/RECKLESSNESS

61.     Plaintiffs re-allege and incorporate all prior paragraphs as if set forth fully herein.

62.     Defendants owe a duty to Plaintiffs to exercise due and reasonable care in the manufacturing, use, and disposal operations to prevent the discharge of toxic chemicals, including PFOA, PFOS, and related chemicals into the water supply.

63.     Defendants owe a duty to Plaintiffs to exercise due and reasonable care in the supplying of clean, non-contaminated, drinkable water and other water utilities.

64.     Defendants breached the duties owed to Plaintiffs, and under the circumstances, Defendants' breaches constitute negligent, willful and/or reckless conduct.

65.     As a direct, proximate and foreseeable result of Defendants' conduct, practices, actions, and inactions, Plaintiffs have been caused to suffer, and will continue to suffer, illnesses such as kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

66.     Therefore, Plaintiffs claim money damages in the amount that will fairly and reasonably compensate them for the harm caused by Defendants. In addition, Plaintiffs claim damages for mental anguish in an amount that is fair and reasonable to be determined by a jury in consideration of the negligent, willful, and reckless conduct of Defendants.

## COUNT II
## NUISANCE

67.     Plaintiffs re-allege and incorporate all prior paragraphs as if set forth fully herein.

68.     Plaintiffs are all owners, possessors, or residents of property served by WMEL and the Water Utilities.

69.     Defendants have created a nuisance by their discharge of PFOA, PFOS, and related chemicals into the Tennessee River, which has caused contamination of their water supply and caused Plaintiffs damage, inconvenience, and harm as it would to any other reasonable person.

70.     The levels of toxic chemical contamination found in the WMEL water supply have created a condition that threatens the health and well-being of Plaintiffs, and causes concern, inconvenience to Plaintiffs as it would to any other reasonable person.

71.     It was reasonably foreseeable, and in fact known to all Defendants, that their actions would place, and have placed, Plaintiffs in immediate risk of physical harm. The nuisance has caused, and will continue to cause, emotional distress until it is satisfactorily abated.

72.     Therefore, Plaintiffs claim money damages in the amount that will fairly and reasonably compensate them for the harm caused by Defendants. In addition, Plaintiffs claim damages for mental anguish in an amount to be determined by the jury that are fair and reasonable in consideration of the nature, severity, and length of time of the nuisance caused by Defendants.

## COUNT III
## FRAUDULENT CONCEALMENT

73.     Plaintiffs re-allege and incorporate all prior paragraphs as if set forth fully herein.

74.     Defendants fraudulently concealed information with respect to the water contamination levels and the ability to consume the water provided by Defendants.

75.     Defendants had information that the water they provided was contaminated at a dangerous level with PFOS, PFOA and other contaminants, and still deny this fact until the present date.

76.     Defendants further fraudulently withheld and concealed information about the substantial health risks associated with drinking and using the contaminated water in any capacity.

77.     The concealment of information by Defendants about the health risks of consuming contaminated water was intentional, and the representations made by Defendants were known by Defendants to be false.

78.     Plaintiffs relied upon the representations of the Defendants and were unaware of the substantial risks of consuming and using contaminated water regularly, which Defendants concealed from the public.

79.     As a direct and proximate result of Defendants' actions, omissions, and misrepresentations, Plaintiffs have suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of capacity for the enjoyment of life, medical and nursing expenses,

surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT IV
## WANTONNESS AND PUNITIVE DAMAGES

80.     Plaintiffs re-allege and incorporate all prior paragraphs as if set forth fully herein.

81.     Defendants owe a duty to Plaintiffs to exercise due and reasonable care in the manufacturing, use, and disposal operations to prevent the discharge of toxic chemicals, including PFOA, POFS, and related chemicals into the water supply and onto Plaintiffs' property.

82.     In breaching the duties described above, Defendants acted in a wanton, willful, and reckless manner.

83.     Defendants knew or should have known the danger to Plaintiffs created by their conduct, practices, actions, and inactions.

84.     Defendants knew or should have known the probable impact, harm, damage, and injury their conduct would have on Plaintiffs.

85.     Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard for Plaintiffs' property and Plaintiffs' health.

86.     Defendants acted with oppression, fraud, and malice towards Plaintiffs, who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing

Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future.

## **RELIEF DEMANDED**

**WHEREFORE, PREMISES CONSIDERED**, as the proximate cause of the foregoing wrongful acts, breaches of standard of care, and willful violations of the law, Plaintiffs seek an award of the following relief:

    A.    Compensatory and punitive damages in excess of the jurisdictional limits of this Court in such a sum as the trier of fact shall award based upon the wrongdoings alleged in this complaint;

    B.    Issue an injunction requiring Defendants to remove their chemicals from the water supplied to Plaintiffs and prevent these chemicals from continuing to contaminate Plaintiffs' water supplies;

    C.    Award attorney fees, costs, and expenses incurred in connection with the litigation of this matter; and

    D.    Any such further, different or additional relief to which Plaintiffs may be entitled to in the premises.

## **PLAINTIFFS DEMAND TRIAL BY A STRUCK JURY**

RESPECTFULLY SUBMITTED,

*/s/ D. G. Pantazis, Jr.*
Dennis G. Pantazis
Craig L. Lowell
D. G. Pantazis, Jr.
Patrick L. Pantazis

Evan D. Pantazis

Attorneys for Plaintiffs

**OF COUNSEL**:
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Facsimile:  (205) 254-1500
Email:       dgp@wigginschilds.com
              clowell@wigginschilds.com
              dgpjr@wigginschilds.com
              ppantazis@wigginschilds.com
              edp@wigginschilds.com

**SERVE DEFEFNDANTS BY CERTIFIED MAIL AT**:

West Morgan-East Lawrence Water and Sewer Authority
2547 Kirby Bridge Road
Decatur, AL 35603

3M Company
c/o CT Corporation System
2 No. Jackson Street, Ste 605
Montgomery, AL 36104

Dyneon, L.L.C.
I-94 and McKnight Road
St. Paul, MN 55144

Daikin America, Inc.
c/o CT Corporation System
2 No. Jackson Street, Ste 605
Montgomery, AL 36104